IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| CHRIS J. SEELYE,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CORNTHWAITE, INC.,<br><br>                    Defendant. | CV-06-13-BU-CSO<br><br>**ORDER DENYING**<br>**CORNTHWAITE, INC.'S**<br>**MOTION TO DISMISS FOR**<br>**LACK OF SUBJECT MATTER**<br>**JURISDICTION** |

    Plaintiff Chris J. Seelye ("Seelye") initiated this action
against Defendant Cornthwaite, Inc. ("Cornthwaite") alleging that
he sustained injuries in a vehicle accident caused by the
negligence of Cornthwaite's agent.  *Complaint & Jury Request*
("*Cmplt.*") (Court's Doc. No. 1) *at ¶¶ 1, 5-6, 8-9, 11*.  In
seeking general and special damages, Seelye invokes the Court's
diversity jurisdiction under 28 U.S.C. § 1332.  *Id. at ¶ 4 and*
*prayer for relief*.

    By Notice filed on August 2, 2006, this case was assigned to
the undersigned for all purposes.  Court's Doc. No. 7.  Pending
before the Court is Cornthwaite's Motion to Dismiss for Lack of

Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) (Court's Doc. No. 13).

As discussed in more detail *infra*, Cornthwaite argues that Montana was its principal place of business when Seelye, a Montana citizen, filed his Complaint on March 3, 2006. Thus, Cornthwaite argues, the Court lacks subject matter jurisdiction because complete diversity of citizenship does not exist.

Having considered the issues presented by the parties, together with their submissions in support of their respective arguments, the Court is prepared to rule.

## I.   *BACKGROUND AND STIPULATED FACTS*

At the preliminary pretrial conference held on September 12, 2006, the parties stipulated to the following:

1.   On September 16, 2003, Seelye was a passenger riding in one of the rear seats of a vehicle being driven by Kimberly Cornthwaite ("Kimberly").

2.   Kimberly's husband, Carl Cornthwaite ("Carl"), was riding in the vehicle's front seat.

3.   Kimberly was driving northbound on Blacktail Creek Road approximately 13 miles south of Dillon, Montana, when she lost control of the vehicle causing a rollover accident.

4.   Kimberly had consumed alcohol on the day of the crash.

5.   Seelye was a citizen of Montana, and resided in Ravalli County. Cornthwaite was incorporated under the laws of Oregon. Kimberly and Carl were officers and agents of Cornthwaite.

*Scheduling Order* filed Sept. 12, 2006 (Court's Doc. No. 12) *at ¶ 2* (stipulated facts).

## II.  *PARTIES' ARGUMENT SUMMARIES AND FACTUAL SUPPORT*

Cornthwaite argues that, at the time Seelye filed his Complaint, he was a citizen of Montana and Cornthwaite had its principal place of business in Montana.  Thus, Cornthwaite argues, diversity of citizenship between the parties was absent and the Court lacks subject matter jurisdiction.  *Deft's Br.* (Court's Doc. No. 13) *at 1.*

Seelye argues that Cornthwaite had been an Oregon corporation that had been administratively dissolved by the Oregon Secretary of State.  Seelye also argues that Cornthwaite's principal place of business was not Montana at the time that he filed this action.  Thus, he argues, complete diversity was present and this Court has subject matter jurisdiction.  *Seelye's Br. at 2,* 7.

In support of their respective positions, the parties filed exhibits[1] and deposition excerpts that establish the following:

In 1986, Cornthwaite, a logging company, originally became incorporated in Oregon when the Oregon Secretary of State accepted and filed its articles of incorporation.  *DEF 00070.*  On February 17, 1995, Cornthwaite again filed its articles of incorporation with the Oregon Secretary of State.  *DEF 00018-00020.*

---

[1]The parties' exhibits are attached to their briefs.  The Court refers to the exhibits herein by the designations used by the parties.

-3-

From October 2002 through December 2003, Cornthwaite logged in Montana and Idaho. *Depo. Carl Cornthwaite 72:2-9; Depo. Kimberly Cornthwaite 12:10-14.* On February 12, 2002, the minutes from Cornthwaite's annual meeting stated as follows:

> Both officers [Kimberly and Carl] present. It was decided to restart the corporation by renewing our registration with the Secretary of State's Office in order to do business as a logging contractor in the State of Montana. We mutually agreed that the home base of our operation would be in Conner, MT to begin with in order to complete some logging contracts. We would set up a local bank account, purchase insurance, join the Montana Logging Association, etc.

*DEF 00142.*

After the 2002 annual meeting, Cornthwaite had a logging job in Idaho that it worked from a base location in Dillon, Montana. *Depo. Carl Cornthwaite 69:7-8; 72:2-9.* Cornthwaite purchased insurance for its business and business equipment from a Missoula, Montana, insurance company. *Id. 69:13-22; 70:12-19.* Cornthwaite also joined the Montana Logging Association and registered its equipment in Montana. *Id. 70:22-23; 71:14-16.*

On May 13, 2002, Cornthwaite registered with the Montana Secretary of State and applied for an assumed business name. *Id. 67:9-25; 68:1-5.* While in Montana, Cornthwaite paid corporate taxes, bought all of its supplies, and hired its independent contractors in Montana. *Id. 72:10-12, 15-16, 19-25; 74:21-25; 75:1-4.*

On February 11, 2003, the minutes from Cornthwaite's annual

meeting stated as follows:

> Both officers are present.  It was decided to move our
> home base to Dillion [sic] MT as this puts us in closer
> proximity to the current contract.  The bank and
> insurance company were both notified of the change of
> address.  All corporate business will take place from
> Dillon MT until further notice.

*DEF 00143.*

At the time, Carl and Kimberly owned a home in Oregon and
rented a place to live in Montana.  *Depo. Carl Cornthwaite 9:23-
25; 10:1-2.*  Montana's Secretary of State listed Cornthwaite's
registered agent, Carl, as having an address in Dillon, Montana,
and listed Cornthwaite's "principal office address" as Dallas,
Oregon.  *Ex. D to Cornthwaite's Br.*  Oregon's Secretary of State
listed Dallas, Oregon, as Cornthwaite's "principal place of
business."  *Ex. E to Cornthwaite's Br.*

When the Idaho logging job was complete, Cornthwaite
apparently began working on a new logging project near Dillon,
Montana, in late 2002 or early 2003.  *DEF 00143.*

On September 16, 2003, the accident that is the subject of
this action occurred.  Between the date of the accident and the
end of 2003, Cornthwaite finished its last logging job in Montana
by completing the project near Dillon.  *Depo. Carl Cornthwaite
57:20-25; 58:1-4.*

In January of 2004, Cornthwaite left Montana and never
returned.  *Id. 6:13-20; 8:24-25; 9:1; 92:15-20.*  Despite leaving
Montana at that time, Cornthwaite continued to owe money on

unpaid debts to creditors in Montana.  *Id. 77:1-8*.

In early January of 2004, Carl moved from Montana to New Mexico to cut trees in a fuel reduction project.  *Id. 6:17-25; 7:1-5; 57:20-25; 58:1-19*.  Carl opened a Cornthwaite corporate bank account in New Mexico and closed the one in Montana.  *Id. 21:6-12; 56:13-20*.  He also rented a storage unit for Cornthwaite in New Mexico where he kept the corporation's assets.  *Id. 22:2-19; 56:10-12*.  He also moved all of Cornthwaite's corporate books and records to New Mexico.  *Id. 9:15-17*.  Carl moved all of Cornthwaite's logging equipment, except one item, to New Mexico and operated it while there.  *Id. 8:4-23; 9:7-14*.  Carl left the one piece of Cornthwaite's logging equipment that he did not take to New Mexico in Montana where he transferred ownership of it to someone in Oregon in September of 2004.  *Id. 76:2-20*.

In August of 2004, Cornthwaite completed the New Mexico fuel reduction project.  *Id. 11:5-16*.  Carl then moved back to Oregon and has been there ever since.  *Id. 58:16-17; 92:15-20*.

On April 16, 2004, the Oregon Secretary of State administratively dissolved Cornthwaite.  *DEF 00015*.  The Montana Secretary of State listed Cornthwaite as "inactive" as of November 1, 2004.  *Ex. D to Cornthwaite's Br*.

Carl and Kimberly filed for bankruptcy in October of 2005.  *Depo. Carl Cornthwaite 22:20-25; 23:1-7*.  The bankruptcy was filed for Carl and Kimberly's personal debts.  Some of those

debts included Cornthwaite debts that Carl had personally guaranteed.  Bankruptcy was not filed on behalf of Cornthwaite. *Id. 23:20-25; 24:1-4.*  On February 13, 2006, the bankruptcy court filed the discharge order.  *Ex. G to Cornthwaite's Br.*

Seelye filed his Complaint in this action on March 3, 2006. *Cmplt. at 1.*

## III.  DISCUSSION

### A.    Subject Matter Jurisdiction – Diversity of Citizenship

As a general matter, federal court subject matter jurisdiction is limited to that power conferred by the Constitution and statute.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  Such power "is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Id. (citations omitted).  "Any doubt as to whether jurisdiction exists is normally resolved against a finding of such jurisdiction."  William W. Schwarzer, A. Wallace Tashima, James M. Wagstaffe, *Federal Civil Procedure Before Trial* ¶ 2:233 (Rutter 2006) (hereafter "*Fed. Civ. Pro. Before Trial*") (citing Kantor v. Wellesley Gallaries, Ltd., 704 F.2d 1088, 1092 (9th Cir. 1983)).

Federal courts have subject matter jurisdiction under circumstances in which, *inter alia*, there exists complete

-7-

diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C. § 1332(a).  Seelye, the party asserting jurisdiction, has the burden of establishing jurisdiction to withstand Cornthwaite's Rule 12(b)(1) motion to dismiss.  Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001).

"Subject matter jurisdiction is determined on the basis of the facts that existed at the time the action was filed."  Stock West Corp. v. Taylor, 964 F.2d 912, 917 (9th Cir. 1992)(citations omitted).  Seelye filed this action on March 3, 2006.  The facts that existed then, therefore, will be determinative.

### 1. *The issue*

For purposes of diversity jurisdiction, a corporation, such as Cornthwaite, is both "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).  Here, the parties do not dispute that Seelye was a citizen of Montana at the time that he filed his Complaint.  *Scheduling Order at ¶ 2.*  The parties also agree, and the record shows, that Cornthwaite was, at one time, incorporated under the laws of the State of Oregon, even though it was administratively dissolved by the Oregon Secretary of State on April 16, 2004.  *Scheduling Order at ¶ 2; DEF 00015; DEF 00070.*  Therefore, Cornthwaite is deemed to be a citizen of Oregon.  28 U.S.C. § 1332(c)(1).

-8-

The sole issue before the Court in determining whether there exists complete diversity, therefore, is whether Cornthwaite's principal place of business was Montana at the time Seelye filed his Complaint.  If Montana was Cornthwaite's principal place of business at that time, Cornthwaite would be deemed a citizen of Montana, complete diversity of citizenship would be absent, and the Court would not have jurisdiction.  If, on the other hand, Montana was not Cornthwaite's principal place of business, complete diversity would exist, and the Court would have subject matter jurisdiction over this action.

### 2.  *The law governing principal place of business of defunct or inactive corporations*

As the parties correctly note, the Ninth Circuit has not addressed the issue of the appropriate approach in determining the citizenship of a defunct or inactive corporation such as Cornthwaite.  Courts that have addressed the issue have been unable to agree on a uniform approach in applying 28 U.S.C. § 1332(c)(1).  In recognizing some of the competing tensions at play with respect to the issue, one court noted:

> The debate over an inactive corporation's principal place of business has revolved around the plain meaning of the statute, as well as Congress's intent in including the principal place of business clause.  In part, 28 U.S.C. [§] 1332(c)(1) states that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it *has* its principal place of business..." (emphasis added).  In adopting this language in 1958, Congress wanted to eliminate "the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation

into the Federal courts simply because it has obtained
a corporate charter from another State."  S.Rep. No.
85-1830, at 5 (1958), reprinted in 1958 U.S.C.C.A.N.
3099, 3101-02; see Comtec, Inc. v. Nat'l Technical
Schs., 711 F.Supp. 522, 523-24 (D. Ariz. 1989).

Sellers v. Kohlberg & Co., LLC, 2001 WL 761187 at *2 (N.D. Cal.
2001).

The courts that have addressed the issue have reached three
main results.  See Patel v. Sugen, Inc., 354 F.Supp.2d 1098, 1111
(N.D. Cal. 2005) (citing *Fed. Civ. Pro. Before Trial* ¶ 2:321.4
(collecting cases)); Homestake Lead Co. of Missouri v. Doe Run
Resources Corp., 282 F.Supp.2d 1131, 1136-37 (N.D. Cal. 2003)
(discussing split of authority among circuit courts).  The
district court in Homestake Lead explained the split of authority
as follows:

> The Third Circuit, focusing on the present tense in
> "the state where it *has* its principal place of
> business," has posited that citizenship via a principal
> place of business ends when a company becomes inactive,
> and a defunct corporation only retains citizenship in
> the state of its incorporation.  See Midlantic Nat'l
> Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995), cert.
> dismissed, 515 U.S. 1184, 116 S.Ct. 32, 132 L.Ed.2d 914
> (1995).
>
> The Second Circuit, noting that Congress gave no
> indication that principal place of business citizenship
> should end if a business becomes inactive, opined that
> such an interpretation would stray from the plain
> meaning of the phrase "a corporation is considered a
> citizen of the state in which it was incorporated *and*
> the state where it has its principal place of
> business."  The Second Circuit accordingly provides for
> citizenship in the state in which a corporation
> conducted its last business transactions.  See Wm.
> Passalacqua Builders, Inc. v. Resnick Developers South,
> Inc., 933 F.2d 131, 141 (2d Cir. 1991).

-10-

> The Fourth and Fifth Circuits - wary of the awkward
> results these bright-line rules might render - have
> opted for a middle ground approach, holding that when a
> substantial period of time has lapsed since a
> corporation was active, its citizenship reverts to
> include only its state of incorporation.  The Fifth
> Circuit, in <u>Harris v. Black Clawson Co.</u>, held that the
> place of a corporation's last transactions is relevant
> to the citizenship inquiry, but as a matter of law
> there can be no principal place of business citizenship
> after a substantial period of inactivity.  961 F.2d
> 547, 551 (5th Cir. 1992).  In <u>Athena Automotive, Inc.
> v. DiGregorio</u>, the Fourth Circuit found that although a
> business can have a continuing impact in a locale after
> it has ceased operations, the three-year absence of the
> corporation in question was long enough to render it
> effectively an out-of-state citizen.  166 F.3d 288,
> 291-92 (4th Cir. 1999).

<u>Homestake Lead</u>, 282 F.Supp.2d at 1136-1137 (emphasis in original)
(internal footnote omitted).

### B.    *The Parties' Arguments*

In the case at hand, Cornthwaite urges the Court to apply
the approach adopted by the Fourth and Fifth Circuits.
*Cornthwaite's Br. at 7-12*.  It argues that this "case-by-case"
approach "applies a flexible analysis to determining a defunct
corporation's principal place of business, ... [and] looks both
at the length of a corporation's inactivity in a given state, and
at whether the corporation had a continuing impact on the place
of its last activity after it became defunct or inactive."  *Id.
at 7*.

Cornthwaite also argues that, if the Court were to apply the
approach adopted by the Second Circuit, which holds that an
inactive corporation's principal place of business is the state

-11-

in which it conducted its last business transactions, it should conclude that Cornthwaite's principal place of business was Montana. *Id. at 12-15*. It argues that its last business activities were in Montana, that complete diversity does not exist, and that the Court lacks subject matter jurisdiction. *Id. 14-15*.

Finally, Cornthwaite acknowledges that if the Court were to apply the approach adopted by the Third Circuit, which holds that a defunct or inactive corporation has no principal place of business and is a citizen only of its state of incorporation, diversity jurisdiction would exist in this case. *Id. at 15-16*. Cornthwaite urges the Court to reject this approach, however, in favor of one of the others because it has "the disadvantage of expanding the scope of diversity jurisdiction," and "runs afoul of the principle that statutes conferring jurisdiction are to be construed narrowly." *Id*. (quoting <u>Patel</u>, 354 F.Supp.2d at 1112).

In opposing Cornthwaite's motion, Seelye raises three somewhat overlapping arguments. First, Seelye argues that the Ninth Circuit has implicitly rejected the Second Circuit's approach of concluding that an inactive or defunct corporation's principal place of business is the state in which it conducted its last business transactions. *Seelye's Br. at 5-6* (citing <u>Stock West Corp. v. Taylor</u>, 964 F.2d 912, 917 (9th Cir. 1992)). Seelye also notes that the Second Circuit's approach is inconsistent with Oregon law, under which Cornthwaite was

-12-

incorporated, because Oregon law "provides that a dissolved corporation continues in existence for five years for the purpose of winding down and liquidating." *Id.* (citing Or. Rev. Stat. Ann. §§ 60.637(2); 60:644; 60.654).

Second, Seelye argues that, regardless of which approach the Court chooses to apply, the evidence of record shows that Cornthwaite's principal place of business was not Montana at the time Seelye filed this action, and that complete diversity of citizenship exists. *Id. at 7-15*. He argues that: (1) under the Third Circuit's approach that concludes that inactive corporations such as Cornthwaite have no place of business, Montana could not be Cornthwaite's principal place of business, *id. at* 7; (2) under the Second Circuit's "last-business-transactions" approach, New Mexico, and not Montana, would be Cornthwaite's principal place of business since its last logging operations were performed in New Mexico, *id. at 7-10*; and (3) under the case-by-case approach employed by the Fourth and Fifth Circuits, Cornthwaite's principle place of business is either New Mexico or Oregon, but not Montana, because Seelye filed this action a substantial amount of time after Cornthwaite was administratively dissolved, and because Cornthwaite's executive and administrative functions were always in Oregon, *id. at 10-15*.

Finally, Seelye argues that Cornthwaite's argument that it had a continuing impact in Montana after it left the state is without merit. *Id. at 15-19*. Seelye argues that the facts upon

-13-

which Cornthwaite relies in advancing its continuing-impact
argument "do not accurately reflect the nature of Cornthwaite,
Inc.'s activities." *Id. at 15*.  For example, Seelye notes that:
(1) although Carl and Kimberly lived in Dillon, Montana, before
Carl moved to New Mexico, some of Cornthwaite's logging was done
in Idaho, *id.*; (2) although Cornthwaite purchased insurance from
Western States Insurance in Missoula, Montana, once Carl moved to
New Mexico, he did not renew the policy because Western States
would not provide coverage in New Mexico, and Carl let the policy
simply run its course, *id. at 16*; (3) although Cornthwaite left
one piece of equipment in Montana when Carl moved to New Mexico,
the piece left behind was not used but rather sat idle in
Montana, *id. at 16-17*; (4) although Cornthwaite may have paid
income taxes in Montana in 2004, such taxes related to its
operations in 2003, *id. at 17*; (5) although Cornthwaite was
registered with Montana's Secretary of State in 2004, the
registration listed Dallas, Oregon, as its principal place of
business, *id.*; and (6) although Carl's and Kimberly's bankruptcy
was discharged in February of 2006, Cornthwaite did not file for
bankruptcy, *id*.

### C.  *Analysis*

The Court has carefully considered the record and the
parties' arguments.  Having done so, the Court concludes, for the
reasons that follow, that it need not adopt, to the exclusion of
the others, any one of the foregoing approaches for determining

-14-

whether Montana was Cornthwaite's principal place of business at the time Seelye filed this action.  Rather, the Court concludes that, were it to apply any of the three approaches discussed above, the facts of this case demonstrate that Montana was not Cornthwaite's principal place of business at the time Seelye filed his Complaint.  Thus, complete diversity of citizenship exists, and the Court has subject matter jurisdiction over this action.  The Court, therefore, will deny Cornthwaite's motion to dismiss.

### 1.    *"No principal place of business" approach*

First, were the Court to apply the Third Circuit's approach that a defunct or inactive corporation has no principal place of business, it is clear that Cornthwaite is a citizen only of Oregon, the state in which it was incorporated.  Because the Oregon Secretary of State administratively dissolved Cornthwaite on April 16, 2004, see *DEF 00015*, it had no principal place of business when Seelye filed this action on March 3, 2006.  Thus, under this approach, because Cornthwaite would be considered to be a citizen only of Oregon, and Seelye a citizen of Montana, diversity of citizenship would exist, and the Court would have subject matter jurisdiction.  Cornthwaite concedes as much. *Cornthwaite's Br. at 15-16*.

### 2.    *"Last-business-transactions" approach*

Second, were the Court to apply the Second Circuit's approach of focusing on the place of the defunct or inactive

-15-

corporation's last business transactions, the Court concludes from the record that Cornthwaite's principal place of business would not be Montana.  Carl testified in his deposition that Cornthwaite completed its last logging job in Montana at the end of 2003.  *Depo. Carl Cornthwaite 57:20-25*.  In January of 2004, Cornthwaite left Montana and never returned.  *Id. 6:13-20; 8:24-25; 9:1; 92:15-20*.

Although Cornthwaite continued to owe money on unpaid debts to creditors in Montana, *id. 77:1-8*, there is little evidence that Cornthwaite conducted further business transactions in Montana after leaving in January of 2004.  In January of 2004, Carl moved from Montana to New Mexico to cut trees in a fuel reduction project.  *Id. 6:17-25; 7:1-5; 57:20-25; 58:1-19*.  He opened a bank account in New Mexico and closed the one in Montana.  *Id. 21:6-12; 56:13-20*.  He also testified that he rented a storage unit for Cornthwaite in New Mexico where he kept the corporation's assets.  *Id. 22:2-10; 56:10-12*.  Carl also moved all of Cornthwaite's logging equipment, except one large item, to New Mexico and operated it while there.  *Id. 8:4-23; 9:9-10*.  With respect to the one piece of equipment that he left in Montana, it sat idle until Carl transferred ownership of it to someone in Oregon in September of 2004.  *Id. 76:2-20*.  Carl also moved Cornthwaite's corporate books and records to New Mexico. *Id. 9:15-17*.

In August of 2004, Cornthwaite completed the New Mexico fuel reduction project. *Id. 11:5-16*. Carl then moved back to Oregon and has been there ever since. *Id. 58:16-17; 92:15-20*. All the while, until the time Seelye filed this action, Cornthwaite conducted no business in Montana.

From all of the foregoing evidence, the Court concludes that Cornthwaite's last business transactions did not occur in Montana. Thus, under the Second Circuit's "last-business-transactions" approach, Cornthwaite's principal place of business was not Montana.[2] Rather, based on the evidence of record, Cornthwaite's principal place of business under the "last-business-transactions" approach was either in New Mexico or Oregon.[3] Under this approach, complete diversity of citizenship would exist between Seelye and Cornthwaite, and the Court would have subject matter jurisdiction over this action.

---

[2]The Court is mindful, as Seelye argues, that the Ninth Circuit implicitly rejected the "last-business-transactions" approach in Stock West. 964 F.2d at 917; see also Patel, 354 F.Supp.2d at 1112 (noting that "Stock West surely signals the Ninth Circuit's rejection of the 'last business activity' test"). Again, the Court does not necessarily endorse this approach, but concludes only that if it were to adopt this approach, it would conclude that Montana was not Cornthwaite's principal place of business.

[3]The Court is not persuaded by Cornthwaite's arguments that "Carl moved to New Mexico, but merely as an experiment into the possibility of beginning a different business" and that Carl's intent not to move Cornthwaite to New Mexico indicates that Cornthwaite did not actually transact business there. *Cornthwaite Br. at 14*. Cornthwaite has cited no authority, and the Court is not aware of any, that supports the argument that the intent of one of a corporation's officers is determinative of the issue of the corporation's principal place of business. Also, as already noted, the evidence discussed herein indicates to the Court that Cornthwaite conducted its last business transactions in a state other than Montana.

-17-

### 3.    *"Case-by-case" approach*

Third, were the Court to apply the approach employed by the Fourth and Fifth Circuits, it would conclude that Montana was not Cornthwaite's principal place of business when Seelye filed this action.[4]  As noted, under the "case-by-case" approach, courts consider whether a substantial period of time has passed since a corporation was active.  If substantial time has passed, the corporation's citizenship is only its state of incorporation.  If the time that has passed is not substantial, the place of a corporation's last business transactions is relevant to, but is not dispositive of, the determination of its principal place of business.  Athena Automotive, 166 F.3d at 291-92 (three-year absence from state was substantial and rendered corporation an out-of-state corporation); Harris, 961 F.2d at 551 (holding that five years of corporate inactivity was "substantial"; thus, court did not reach issue of weight to give place of last business activity).

In considering the duration of a corporation's inactivity, courts that have adopted this approach acknowledge that a corporation's activities "does not usually end with the abruptness of closing its doors.  Even when a corporation has ceased all operations and has become inactive, the continuing impact of its business in a given locale could linger on to an

---

[4]The Northern District of California, a district court within the Ninth Circuit, has adopted this approach.  Patel, 354 F.Supp.2d at 1112-13; Homestake Lead Co., 282 F.Supp.2d at 1136-38; Sellers, 2001 WL 761187.

extent sufficient to give it a geographical identity there as its principal place of business." Athena Automotive, 166 F.3d at 291.

With respect to the length of corporate inactivity in the instant case, the record reflects that Cornthwaite ceased operations in Montana at the end of 2003, some 27 months before Seelye filed this action. *Carl Cornthwaite Depo. 57:20-25*. Also, the Oregon Secretary of State administratively dissolved Cornthwaite on April 16, 2004, nearly 23 months before Seelye filed this action. *DEF 00015*. Further, Cornthwaite completed its fuel reduction project in New Mexico in August of 2004, about 19 months before Seelye filed this action. *Carl Cornthwaite Depo. 11:5-16*.

The issue of whether Cornthwaite's period of inactivity is "substantial" presents a somewhat close call in light of the various decisions from the courts that have considered the question.[5] The Court concludes, however, that, even if it determines that the period of inactivity was not substantial, Montana was not  Cornthwaite's principal place of business under the remaining portion of the "case-by-case" approach for two

---

[5]Athena Automotive, 166 F.3d at 291-92 (concluding that three-year absence from state was substantial); Harris, 961 F.2d at 551 (holding that five years of corporate inactivity was substantial); Patel, 354 F.Supp.2d at 1113 (holding that about one year between a business's shutdown and pendency of lawsuit was not substantial); Homestake Lead Co., 282 F.Supp.2d at 1136-38 (holding that 13 years of inactivity in Missouri strongly indicated that any prior connection to Missouri was severely diluted such that corporation's principal place of business was not Missouri); Sellers, 2001 WL 761187 at *4 (holding that less than 2 years of inactivity was not substantial).

reasons.

First, as discussed above in detail, Cornthwaite's last business transactions did not occur in Montana.  See *supra* § III.C.2.  As noted, Cornthwaite performed a fuel reduction logging project in New Mexico after it left Montana in January of 2004.  Also, the Oregon Secretary of State administratively dissolved Cornthwaite on April 16, 2004, more than three months after it left Montana never to return, and while Cornthwaite was performing the New Mexico fuel reduction job.  Thus, Cornthwaite's last business transactions were not in Montana.

Second, the Court agrees with Seelye's argument that Cornthwaite has overstated the impact that it has had in Montana after it left the state in January of 2004.  For example:  (1) although Cornthwaite purchased insurance from a Montana provider, once Carl moved to New Mexico, he did not renew the policy because its coverage did not extend to New Mexico, and Carl let the policy simply run its course, *Carl Cornthwaite Depo. 77:22-25; 78:1-16;* (2) although Cornthwaite left one piece of equipment in Montana when Carl moved to New Mexico, the piece left behind was not used but rather sat idle in Montana, *id. 76:8-20;* (3) although Cornthwaite may have paid income taxes in Montana in 2004, such taxes related to its operations in 2003, *id. 79:22-25; 80:1-3;* and (4) although Carl's and Kimberly's bankruptcy was discharged in February of 2006, Cornthwaite did not file for bankruptcy, *id. 22:24-25; 23:1-25; 24:1-4.*

-20-

From all of the foregoing, the Court concludes, under the "case-by-case" approach discussed herein, that Cornthwaite's principal place of business was not Montana.  Although it undoubtedly transacted business in Montana at one time, its connections to Montana after departing in January 2004 are too attenuated to allow the Court to deem Montana its principal place of business in 2006 for purposes of diversity jurisdiction citizenship.  Accordingly, under this approach, complete diversity of citizenship would exist between Seelye and Cornthwaite, and the Court would have subject matter jurisdiction over this action.

## IV.   *CONCLUSION*

Based on the foregoing,

**IT IS ORDERED** that Cornthwaite's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Court's Doc. No. 13) is DENIED.

The Clerk of Court is directed to notify the parties forthwith of the making of this Order.

DATED this 3rd day of January, 2007.

/S/  Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge